## SPARKS et al. v. HUMBLE OIL & REFINING CO. et al.

### No. 5400.

Court of Civil Appeals of Texas. Texarkana.

May 19, 1939.

Rehearing Denied May 25, 1939.

Donald & Donald, of Bowie, C. W. Falvey, of Lufkin, and H. G. Hart, of Mt. Pleasant, for plaintiffs in error.

Robt. F. Higgins, of Houston, J. A. Ward, of Mt. Pleasant, and Paul Shenk, Jr., of Houston, for defendants in error.

JOHNSON, Chief Justice.

This suit was filed November 10, 1936, by Johnnie P. Sparks and others against Humble Oil & Refining Company, E. L. Riddle, and D. A. Riddle, defendants below, in an action of trespass to try title to 80 acres of land described in plaintiffs' petition, located in Titus County. Housch & Thompson, Inc., intervened, claiming title to certain mineral interests deraigned from E. L. and D. A. Riddle and was aligned as a defendant. Each of the defendants filed a general denial and pleaded not guilty.

Plaintiffs are the sole heirs of J. A. Sparks, deceased. It is their contention that the land here involved was community property of J. A. Sparks and his wife, Parkie. Defendants claimed the land was the separate property of Mrs. Parkie Sparks. Plaintiffs showed in evidence that the land was conveyed by W. H. Fry and wife to J. A. Sparks and wife, Parkie Sparks, by deed dated January 16, 1902, which recited a consideration of $200 cash in hand paid by J. A. Sparks. None of the plaintiffs testified, except P. F. Newman, husband of Mary Newman who was a daughter of J. A. and Parkie Sparks. His testimony related solely to identifying plaintiffs as the heirs of J. A. and Parkie Sparks, both deceased.

Defendants showed that on January 13, 1902, three days prior to Fry's conveyance of the land to J. A. and Parkie Sparks, that said Parkie Sparks joined by her husband, J. A. Sparks, had conveyed certain real estate, the separate property of Parkie Sparks, located in the city of Mount Pleasant, to W. H. Vaughan for $250 cash, and that the $200 paid for the land involved in this suit was a part of the proceeds of said sale of Mrs. Parkie Sparks' separate property. Witnesses Mrs. Laura De Prato, Will Duke and John Duke testified that J. A. Sparks stated to them and in their presence that the proceeds of the sale of the above-mentioned separate property of Mrs. Parkie Sparks were used in paying Mr. Fry for the land here involved. Their testimony is not disputed.

J. A. Sparks died in 1903. Mrs. Parkie Sparks died sometime after December 28, 1908. On the date last mentioned Mrs. Sparks conveyed the land here involved to F. P. Riddle. F. P. Riddle died September 26, 1918. Defendants E. L. and D. A. Riddle claimed title under F. P. Riddle. Defendants Humble Oil & Refining Company and Housch & Thompson, Inc., claim mineral interests under E. L. and D. A. Riddle.

Upon close of the evidence all parties, plaintiffs and defendants, moved for an instructed verdict in their favor. The motions were overruled, and exceptions were taken to the action of the court. In response to special issues the jury found: (1) That at the time the property in controversy was deeded to J. A. Sparks and Parkie Sparks, January 16, 1902, it was paid for with funds derived from the separate estate of Parkie Sparks. (2) That at the time the land was deeded to them it was the intention of Mrs. Parkie Sparks and J. A. Sparks to make it their community property. (3) That the deed executed by Mary Newman and others August 5, 1918, was delivered by one of the grantors to F. P. Riddle or some one for him during his life. (4) That Johnnie Sparks signed the last mentioned deed on June 1, 1919. (5) That at the time Johnnie Sparks signed and acknowledged said deed he did not know that F. P. Riddle was dead. (6) That at the time he signed and acknowledged said deed Johnnie Sparks knew that E. L. and D. A. Riddle claimed that they had acquired the title of said F. P. Riddle.

Plaintiffs and defendants each moved for judgment in their favor. The motion of plaintiffs was overruled and the motion of defendants, in which it was contended that special issue No. 2 was immaterial and without support in the evidence, was granted, and judgment was entered that plaintiffs take nothing by reason of their suit. Plaintiffs duly excepted and have perfected their appeal by writ of error, and will be referred to as appellants.

■ The controlling question in this case is that of whether or not the 80 acres of land in controversy was community property of J. A. Sparks and wife, Parkie Sparks, or was the separate property of the wife, Parkie Sparks. The deed from W. H. Fry to J. A. Sparks and wife, Parkie Sparks, introduced in evidence by plaintiffs, raised a presumption that the property was community. The presumption is a rebuttable one and operates only in the absence of satisfactory proof to the contrary. Janes v. Gulf Production Co., Tex. Civ.App., 15 S.W.2d 1102; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366; Daggett v. W. B. Worsham & Co., Tex.Civ. App., 264 S.W. 180; Speer's Law of Martial Rights (3d Ed.) Sec. 355. Defendants produced testimony showing that the prop-

erty was purchased with separate funds of the wife, Parkie Sparks. No evidence was offered by plaintiffs, and none appears in the record, disputing that fact. The jury found that the property was paid for with funds derived from the separate estate of Parkie Sparks. We think the determination of that issue adversely to appellants and in favor of appellees concluded the case. However, for the purpose of the record, should our conclusions be in error, we shall discuss the propositions raised by appellants.

Appellants contend that they were entitled to a judgment upon the finding of the jury, in answer to special issue No. 2, that it was the intention of J. A. Sparks and wife, Parkie Sparks, at the time the property was deeded to them to make it community property. Appellants cite and rely upon the case of Cummins v. Cummins, Tex.Civ.App., 224 S.W. 903, 905. In that case it appears that there was a discussion and understanding between the husband, J. S. Cummins, and the wife, Hazel Cummins, prior to their purchase of the property, that the separate funds of each and community funds would (and in fact did) contribute to its payment; that the initial payment was made with separate funds of the husband and that the deferred payments were discharged with the wife's separate funds and community funds. With reference to this Mrs. Cummins testified: "We just put it all together, after we married, and paid off the first note." Based upon such understanding together with the attending facts and circumstances the Court of Civil Appeals held that there was sufficient evidence in that case to support the trial court's finding that it was the intention of the husband and wife at the time of the purchase to acquire community ownership of land, and that such intention under the facts and circumstances shown controlled as to the character of title being community, against the contention of the deceased husband's parents that he acquired a separate estate in the land in proportion that his separate funds contributed to its payment. Appellants stress the following language found in that opinion: "* * * But in such cases, (where the initial payment constituted the separate property of the husband), except where the deed itself by express terms declares the status of the property, whether the property be conveyed to the wife or to the husband, or to them jointly, the status may be controlled by the intention of the parties at the time of the taking of the title, and this intention may be ascertained by parol evidence of surrounding circumstances, contemporaneous declarations of the parties, and other admissible evidence that would tend to show what the intention of the parties was at such time."

Necessarily, as in all cases, the language used in the opinion of the court in that case is to be construed in the light of the facts before the court. We do not interpret the language as meaning, nor is it the rule that the bare intention alone of the husband and wife at the time of purchase will always determine whether the character of title acquired is community or separate. See Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881, and authorities there cited. However, it is sufficient for decision of appellants' case to here point out that it does not come within the rule contended to have been declared in the Cummins case, for the reason that the record here is without any testimony, facts or circumstances tending to show an intention on the part of J. A. Sparks and wife, Parkie Sparks, at the time it was deeded to them to acquire community title to the property. The testimony here is: "He (J. A. Sparks) said he was going to buy some land with the money his wife got from property that my (Laura De Prato's) grandmother left to her. They sold the land and the money she (Parkie Sparks) got for it they intended to put it into property that they might have a home." And after the purchase J. A. Sparks said: "He said I bought it but aunty (Parky Sparks) paid for it." The fact that J. A. Sparks intended to and did purchase the land with his wife's separate funds "that they might have a home" is no evidence that he intended that the title to the home thus acquired would become community property; and if he did so intend, his intention alone would not deprive the wife of her separate title to the land.

It is contended that the recital in the deed by the vendor that he had received the consideration for the conveyance, reading: "for and in consideration of the sum of Two Hundred ($200.00) Dollars, to be paid by J. A. Sparks as follows: cash in hand paid the receipt whereof is hereby acknowledged," and the further fact that the conveyance was made to "J. A. Sparks and wife, Parkie Sparks" raises an inference or has some special probative

'force in showing an intention of J. A. Sparks and Parkie Sparks at the time to acquire community title to the property. We do not sustain this contention. By virtue of R.S.1895, Article 2967, in force at that time, the husband was legally vested with the right of possession, management and control of the wife's separate property. Givens v. Carter, Tex.Civ.App., 146 S.W. 623; Speer's Law of Material Rights (3d Ed.) Secs. 121, 122. There was no testimony showing a parol gift of the funds by the wife to the husband or to the community. So, his possession of the $200, shown to be the wife's separate funds, and the vendor's express acknowledgment of its receipt or manual delivery to him by the husband, J. A. Sparks, and that the conveyance was made to the husband and wife, did not raise (in addition to the presumption of community arising from the fact that the property was purchased during marriage) any special inference or independent presumption showing a previous parol gift by the wife to the husband or to the community estate, or of any specific intention on the part of either the husband or the wife to make the land thus acquired community property. The answer of the jury to special issue No. 2 is wholly without any testimony, fact or circumstances in evidence to support it.

■ Appellants assign as error the action of the trial court in overruling their objections to the admission in evidence and their motion to strike from the record the recitals contained in the deed from Mrs. Parkie Sparks to F. P. Riddle reading: "The above described property is my own separate property in my own separate right, having been paid for with my own money." The deed containing the recital was introduced in evidence by the defendants. It constituted a link in their chain of title. Appellees (defendants) contend that the wording of appellants' objections to the introduction of the deed containing the recital and appellants' motion to strike the recital from the record is not sufficient, in that the deed was unquestionably admissible, and no request was made to limit the effect of the deed or to instruct the jury not to consider the recital contained therein. It is not necessary to determine this contention urged by appellees; because, considering appellants' assignment and conceding that the action of the trial court was error, it is not such error in the circumstances of this case as will authorize

a reversal of the judgment rendered, for the reason that it was otherwise established by competent evidence, undisputed, that the property was the separate property of Mrs. Parkie Sparks.

■ The defendants introduced in evidence a deed executed by Mrs. Mary Newman and others (plaintiffs) who were identified as heirs of J. A. Sparks, deceased, conveying the land in question to F. P. Riddle, dated August 5, 1918, reciting a cash consideration "and the further consideration of perfecting the title to the herein described land." And, in addition to the granting clause the following: "To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in any wise belonging to the said F. P. Riddle, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to forever quitclaim said premises unto the said F. P. Riddle, his heirs an assigns against our heirs, executors and administrators, forever." Appellants objected to the introduction of this deed on the asserted grounds that it was void because signed and acknowledged by Johnnie Sparks, one of the grantors, after the death of the grantee named therein, F. P. Riddle. The evidence is sufficient to show that all the grantors signed and acknowledged the deed prior to the death of F. P. Riddle, except said Johnnie Sparks, who signed and acknowledged it after the death of F. P. Riddle. It appears that Johnnie Sparks signed the deed at the request and for the benefit of E. L. and D. A. Riddle who were claiming to have acquired the title of F. P. Riddle. They paid Johnnie Sparks a cash consideration for signing and acknowledging the deed. No contention is made that the consideration was inadequate and no offer of its return was made upon the trial of this case. "It is a well-established rule that a deed can be made only to grantees in existence or life, at the time of the execution of the deed." Vineyard v. Heard, Tex.Civ.App., 167 S.W. 22, 25; 14 T.J. 796, Sec. 39. But the same authorities recognize that "a deed made to the heirs of a dead person is valid, if it can be shown who was intended." It is thought that a deed to and intended for the benefit of the assigns (E. L. and D. A. Riddle) of a deceased person would come within the rule last quoted. And in 18 C.J. 158, Sec. 36, it is said (after stating the rule that a deed to deceased person is invalid): "But

on the contrary a deed will not be declared void, on behalf of the grantor who retains the full consideration, on the sole ground that the grantee who paid the consideration died before execution of the deed. Nor does the rule that a conveyance without a grantee capable of receiving the grant is void apply to equitable rights growing out of such a conveyance. Further, if it was the intention that a grant be made to a person in existence, the intention of the parties may be effectuated, although the grantee is described by the name of a person deceased."

Though its validity is not essential to defendants' title or necessary in support of the judgment, we think the deed evidences a legal conveyance on the part of all the heirs except Johnnie Sparks, and that in the circumstances Johnnie Sparks would be estopped to declare its invalidity.

The judgment of the trial court is affirmed.